IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

NELLIE J. RAINS                                                                                  PLAINTIFF

VS.                          CIVIL NO. 05-3045

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Nellie J. Rains, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act (the "Act").

**Procedural Background:**

The application for DIB now before this court was filed on June 12, 2003, alleging an amended onset date of June 20, 2003, due to abdominal pain, lower back pain, cardiac problems, and seizures. (Tr. 15, 59, 263-264). An administrative hearing was held on September 17, 2004. (Tr. 254-292). Plaintiff was present and represented by counsel.

At the time of the hearing, plaintiff was sixty years old, and possessed a high school education. (Tr. 15). Records indicate that her past relevant work experience ("PRW") was as a sewing machine cuff setter. (Tr. 15).

On January 25, 2005, the Administrative Law Judge ("ALJ") issued a written decision finding that plaintiff suffered from severe impairments, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 21). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC") to perform a significant range of light work, limited by her

ability to occasionally crouch; kneel; crawl; and, balance and never operate dangerous machinery; work around hazards such as ropes, ladders, or scaffolds; or, work near pollutants such as dust and fumes. He then determined that she could return to her PRW as a sewing machine cuff setter. (Tr. 22).

On July 16, 2005, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

**Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's determination that the RFC assessments completed by Dr. Larry Jennings, plaintiff's treating physician, and Dr. Charles Varela, an orthopaedic consultative examiner, were without substantial support from the other evidence of record. Instead,

3

he relied on the RFC assessment of a non-examining consultative physician when concluding that plaintiff could perform a significant range of light work and did not require frequent position changes. We note, however, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Further, the United States Court of Appeals for the Eighth Circuit has held that the opinion of a treating physician is generally entitled substantial weight. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight).

The pertinent medical evidence is as follows. Records reveal that plaintiff had a history of severe arthritis and lower back pain for which she was prescribed Lodine and Robaxin. (Tr. 127). Plaintiff injured her back in 1987 while exercising. (Tr. 196). She felt a pop in her lower back which resulted in sciatica down the right leg. This eventually resolved, but reportedly made it difficult for her to work in the sewing factory. As a result, she had to significantly modify her position at the machine, to include frequent position changes and the ability to periodically stand up and walk around. In 2001, plaintiff fell down some stairs, resulting in a very severe episode of mid-lower back pain. According to her reports, this required her to stop working. (Tr. 196).

On June 20, 2003, plaintiff complained of constant back and knee pain. (Tr. 194). She indicated that the pain was worsened by prolonged standing and reported occasional radiation of the pain into the back of the legs. In addition, plaintiff reported some numbness in the legs. An examination revealed mid-abdominal tenderness without mass guarding or rebounding. Dr. Marshall Marvin also noted tenderness to deep palpation in the SI joints and a positive straight leg raise test. Dr. Marvin then diagnosed her with chronic lower back pain and left abdominal tenderness.

4

Accordingly, he ordered diagnostic testing and a pelvic examination. (Tr. 195). On June 26, 2003, an abdominal ultrasound was negative. (Tr. 138).

On November 24, 2003, plaintiff complained of chronic lower back pain. (Tr. 185). Dr. Jennings noted that this first began in June 2003. X-rays showed degenerative arthritic changes in the lower back. Further, an examination revealed mild protective posturing and a mild protective gait, as well as tenderness generalized in the lumbosacral area. As such, Dr. Jennings assessed her with lower back pain with degenerative changes that appeared to be chronic. He indicated that her current medication "helped" her discomfort, but that is was "suboptimal." Therefore, Dr. Jennings added Ultram for stronger pain control. (Tr. 185).

This same date, Dr. Jennings completed an RFC assessment. (Tr. 187-190). He diagnosed plaintiff with chronic lower back pain and noted that plaintiff's prognosis was guarded. Dr. Jennings indicated that plaintiff also suffered from anxiety and that this condition contributed to the severity of her symptoms and her functional limitations. (Tr. 188). Further, he reported that her condition would constantly interfere with her attention and concentration, rendering her incapable of even a low stress job. (Tr. 188). Dr. Jennings noted that plaintiff's condition would also likely cause her to miss more than four days of work per month. (Tr. 190).

Dr. Jennings opined that plaintiff could sit for one hour during an eight-hour workday, stand for thirty minutes, and stand/walk for a total of two hours per day. (Tr. 188-189). He also stated that she would require periods of walking around every thirty minutes for approximately two to three minutes. (Tr. 189). In addition, Dr. Jennings indicated that she would need a position that allowed her to shift positions and take unscheduled breaks. He then reported that she could frequently look down, turn her head to the right or left, and hold her head in a static position; occasionally look up,

5

climb ladders, and climb stairs; and, rarely lift less than ten pounds, twist, stoop, and crouch/squat. (Tr. 189-190).

On December 17, 2003, plaintiff complained of pain in the upper lumbosacral area of her back. (Tr. 184). This was noted to be a chronic problem. However, since her last visit with Dr. Jennings, she had contracted the flu and reinjured her back due to hard coughing. She indicated that her back pain was now much more intense. Plaintiff stated that she was experiencing difficulty with daily activities, as well as difficulty resting at night. An examination revealed an abnormal gait caused by protective posturing, tenderness over the lumbosacral area, and a moderately decreased range of motion. An x-ray of her back showed some mild lipping of the upper lumbosacral spine. For this, Dr. Jennings added Lorcet and Flexeril to her medication regimen. He also recommended an MRI; however, because plaintiff had no insurance, she opted to postpone the testing. (Tr. 184).

On February 14, 2004, plaintiff underwent an orthopaedic consultative examination with Dr. Varela. (Tr. 196-197). Plaintiff rated her pain as a seven on a scale of one to ten, stating that her pain was gradually increasing in severity. An examination revealed markedly limited cervical spine motion that improved when distracted. However, her cervical flexion and extension remained consistently limited at forty degrees and thirty degrees, respectively. (Tr. 196, 198). Dr. Varela noted stocking-glove pattern decreased sensation on the right lower extremity with one centimeter of calf atrophy on the right, as compared to the left. (Tr. 196). Localized tenderness in the midline about the L4-S1 was also noted, allowing the doctor to pinpoint the exact area of discomfort during motion. Standing flexion was limited while lateral flexion was within normal limits. Dr. Varela also noted fairly marked right paravertebral muscle spasm. He then indicated that plaintiff's symptoms were consistent with a mechanical type of lower back pain. Although he did not believe her to be

malingering, Dr. Varela did find a strong psychological component affecting her ability to cope with her discomfort. Further, he opined that there was some limitation in her spine as evidenced by the physical findings of muscle spasm and decreased range of motion. As such, Dr. Varela concluded that plaintiff would not be able to perform any manual labor-type of activities. Instead, he recommended sedentary positions such as desk-type work that allowed for frequent position changes. Dr. Varela then noted that she should lift no more than twenty pounds occasionally and never climb or be exposed to heights or driving occupations. (Tr. 197).

Given the fact that both Drs. Jennings and Varela examined plaintiff and agreed that her condition required that she be allowed to frequently change positions, we believe that the case should be remanded to the ALJ for further consideration of these medical reports. Both doctors have noted limitations in the range of motion in plaintiff's back, and a recent x-ray revealed some lipping of the upper lumbosacral spine. (Tr. 184, 196-197). Further, although plaintiff was prescribed Ultram, Lorcet, and Flexeril for back pain and muscle spasms, her pain relief was noted to be "suboptimal." (Tr. 184-185). Therefore, as Drs. Jennings and Varela's opinions are the only opinions of record and are not contradicted by the evidence, we do not find substantial evidence to support the ALJ's determination that their opinions are without record support. Accordingly, on remand, the ALJ is directed to reconsider their RFC assessments.

**<u>Conclusion:</u>**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and, therefore, recommend that the denial of benefits to plaintiff be reversed and this matter remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of June 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE